IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LANCASTER COMPOSITE, INC., | |
| Plaintiff, | Civil Action No. 04-1414 SLR |
| v. | JURY TRIAL DEMANDED |
| HARDCORE COMPOSITES OPERATIONS, LLC and W. SCOTT HEMPHILL, | |
| Defendants. | |

**PLAINTIFF LANCASTER COMPOSITE, INC.'S
FIRST REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS TO
DEFENDANT W. SCOTT HEMPHILL**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Lancaster Composite, Inc. requests that Defendant W. Scott Hemphill hereby produce the following documents and things for inspection and copying within thirty (30) days of service hereof at the offices of Seitz, Van Ogtrop & Green, PA, 222 Delaware Avenue, Suite 1500, P.O. Box 68, Wilmington, DE 19899.

**DEFINITIONS OF TERMS AND INSTRUCTIONS**

1. As used herein, the term "Hemphill" shall mean Defendant W. Scott Hemphill and his representatives, agents, employees and all persons acting on and purporting to act on his behalf. The term "Hardcore" is used to refer to Hardcore Composites Operations, LLC., any subsidiaries or associated organizations, officers, directors, trustees, employees, staff members, agents and representatives including defendant's counsel and/or patent counsel, their current or

DOCKET NO.: 42
DATED: 5/24/05

past officers, directors, employees, agents and other representatives who have, may have, or are expected to have knowledge relating to this lawsuit and the questions herein propounded. As used herein, the term "Plaintiff" shall mean Lancaster Composite, Inc. ("Lancaster Composite").

2. In the following document requests, the term "document" is used in its customary broad sense and includes without limitation the documents of Hemphill or Hardcore including without limitation the following items, whether printed, or recorded in any medium, including electronic and magnetic media, or reproduced by hand or any other mechanical process, or written or produced by hand, and whether or not claimed to be privileged or confidential or personal; namely, agreements, communications, including intracompany communications; e-mail; correspondence; telegrams; memoranda; summaries or records of telephone conversations; summaries of records of personal conversations, diaries, forecasts, statistical statements; graphs; laboratory and engineering reports and notebooks; changes; plans; drawings; samples, prototypes and tangible things; photographs, films, pictures and videotapes; minutes or records of meeting, including directors' meetings; minutes or records of conferences; expressions of statements of policy; lists of persons attending meetings or conferences; reports and/or summaries of interviews or investigations; opinions or reports of consultants' patent appraisals; opinions of counsel, records, reports or summaries of negotiations; brochures, pamphlets; advertisements; circulars; trade letters; packing material; press releases; drafts of any documents; revisions of drafts of any document; original or preliminary notes and marginal comments appearing on any document. A comment or notation appearing on any document, and not a part of the original text, is to be considered a separate "document."

3. The term "the '889 Patent" shall mean U.S. Patent No. 5,800,889 and "the '594 Patent" shall mean U.S. Patent No. 6,048,594, the Patents-in-Suit.

4. The term "Composite Product" shall mean any assembly, including without limitation, any fiber reinforced resinous fillable structure, which Hemphill or Hardcore, or any other person or entity acting as an agent or subcontractor for Hemphill or Hardcore, has designed, made, manufactured, installed, constructed, bid, sold, offered for sale, or for which pre-qualification or qualification was sought.

5. Any documents called for herein which Hemphill or Hardcore claims to be privileged or otherwise protected against discovery on any ground shall be produced to the extent not privileged or otherwise protected and shall be identified by giving:

> (a) a description of the general type of document, i.e., letter, memorandum, report, miscellaneous note, etc.;
>
> (b) the date;
>
> (c) the author;
>
> (d) the organization, if any, with which the author was then connected and his title and job description;
>
> (e) all addressees or recipients;
>
> (f) all other distributees;
>
> (g) the organization, if any, with which each addressee, recipient or distributee was then connected;
>
> (h) a general summary of the subject matter;
>
> (i) grounds, if any, for refusal to produce the documents; and
>
> (j) present location of the documents and each and every known copy thereof, including the title, index number and location, if any, of the file in which the document is kept, or the file from which such documents were removed, if

removed for the purpose of this case, and the identity of all persons responsible for the filing or other disposition of the documents.

6. Each copy of any document which contains any marking not appearing on the original or which is an alteration of the original in any way or which is discovered at a different location or in the possession or custody of a different person than the person in possession of the original is a separate document for purposes of these discovery requests.

7. Any document called for herein of which Hemphill or Hardcore has knowledge or information shall be identified in the manner set forth in paragraphs (a) through (j) above.

8. These requests are deemed to be continuing in nature. If further responsive documents come to the possession or attention of Hemphill or Hardcore at any time during the course of this litigation, such documents are to be produced as required by the Federal Rules of Civil Procedure.

9. Insofar as any of the terms below are used herein, the following definitions apply:

(a) "Communications" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

(b) "Concerning" means relating to, referring to, describing, evidencing or constituting.

(c) "Person" is defined as any natural person or any business, legal or governmental entity or association.

(d) The terms "all" and "each" shall be construed as all and each.

(e) The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

(f) The use of the singular form of any word includes the plural and vice versa.

10. For additional information and/or instructions, please see Plaintiff Lancaster Composite, Inc.'s First Set of Interrogatories addressed to Defendant W. Scott Hemphill.

## **DOCUMENTS REQUESTED**

1. All documents concerning the marketing, sale, bids and/or offers to sell Composite Product on or after June 25, 2004.

2. All documents concerning the marketing, sale, bids and/or offers to sell Composite Product before June 25, 2004.

3. All documents concerning the total number of Composite Products marketed, sold, or offered for sale by you, either by individually, as an agent or by an employee of Hardcore, or an agent or employee by any other business entity, as well as the total growth revenue received from any such sale from the total gross profit received on such sale.

4. To the extent not produced in response to the above requests, all documents concerning marketing and/or sales, bids or offers to sell Composite Product by you, either by individually, as an agent or by an employee of Hardcore, or an agent or employee of any other business entity, to include customer or market surveys, field representative reports, comments, reports, and evaluations concerning the features, advertising, promotional literature, performance, benefits or advantages of the Composite Products, including, but not limited to, all documents concerning:

(a) the preference of an actual or potential purchaser, licensee or customer of any Composite Product due to any actual or expected property, benefit or characteristic derived from the use of the Composite Product;

(b) the reasons for the actual or potential purchase or use of the Composite

Product.

(c) any relationship between sales or marketing of the Composite Product and the sale or marketing of any of Hardcore's other products or services, including but not limited to products obtained through the use of the Composite Product; and

(d) any advantages, benefits and improved performance of the Composite Product over any other Composite Product.

5. All documents concerning installation, construction, use and/or planned or potential use of any Composite Product on or after June 25, 2004.

6. All documents concerning installation, construction, use and/or planned or potential use of any Composite Product before June 25, 2004.

7. All documents reflecting the total number of Composite Products sold by you on or after June 25, 2004, the gross revenue received from such sales, and the total gross profit received on such sales.

8. All documents reflecting the total number of Composite Products sold by you before June 25, 2004, the gross revenue received from such sales, and the total gross profit received on such sales.

9. All documents, drawings, sketches, descriptions, write-ups, disclosures and drafts thereof describing or depicting any composite product or prototypes thereof identified in your answers to the accompanying Interrogatories, including, without limitation, blueprint sketches and engineering drawings, concerning the construction, structure, specification or description of the composite product or product thereof.

10. All documents supporting any contention W. Scott Hemphill may have that any Lancaster Composite product is no substitute for Hardcore's Composite Product or Hemphill's

Composite Product, including, but not limited to, all documents concerning the differences between Hardcore's Composite Product/Hemphill's Composite Product and any Lancaster Composite product.

11. All documents referring or relating to bids, proposals, estimates, approvals, or contracts, for Composite products provided or received on or after June 25, 2004.

12. All documents referring or relating to bids, proposals, estimates, approvals, or contracts, for Composite products provided or received before June 25, 2004.

13. All documents referring or relating to any facts Hardcore believes tend to show that Hardcore has an express, non-express, or implied license, or otherwise is authorized to practice the inventions of the '889 and/or '594 Patents.

14. To the extent not requested above, all documents which identified or referred to in Hemphill's Answers to the Interrogatories.

                                      SEITZ, VAN OGTROP & GREEN, P.A.

                                      /s/ George H. Seitz, III
BY: _____
GEORGE H. SEITZ, III (No. 667)
222 Delaware Avenue
Suite 1500
Wilmington, DE 19899
(302) 888-0600
Attorneys for Plaintiff and
Counterclaim Defendant

Co-Counsel
George C. Werner, Esquire
Court ID No. 28757
BARLEY, SNYDER, SENFT & COHEN, LLC
126 East King Street
Lancaster, PA 17602-2893
717-299-5201

Dated: May 24, 2005

48293 v1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| LANCASTER COMPOSITE, INC., | |
| Plaintiff, | Civil Action No. 04-1414 SLR |
| v. | JURY TRIAL DEMANDED |
| HARDCORE COMPOSITES OPERATIONS, LLC and W. SCOTT HEMPHILL, | |
| Defendants. | |

### NOTICE OF SERVICE

I, GEORGE H. SEITZ, III, Esquire, hereby certify that on this 24th day of May, 2005, I caused copies of this *Notice of Service* along with the *Plaintiff Lancaster Composite, Inc.'s First Request for Production of Documents and Things to Defendant W. Scott Hemphill* to be served as follows:

#### Via U.S. Mail

Mr. W. Scott Hemphill
517 Riblett Lane
Wilmington, DE  19808

SEITZ, VAN OGTROP & GREEN, P.A.

/s/ *George H. Seitz, III*
_____
GEORGE H. SEITZ, III (#667)
222 Delaware Avenue, Suite 1500
P.O. Box 68
Wilmington, DE  19801
(302) 888-0600
(302) 888-0606 - facsimile

Attorneys for Plaintiff

Dated:  May 24, 2005

48295 v1